IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

**RECEIVED**
**NOV 18 2010**
CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Criminal No. 3:10-cr-87 |
| Plaintiff, ) | |
| ) | **INDICTMENT** |
| v. ) | T. 18 U.S.C. §1341 |
| ) | T. 18 U.S.C. §1343 |
| WINNIFER ELVIDGE, and, ) | T. 18 U.S.C. §1344 |
| PAUL BIEBER, ) | T. 18 U.S.C. §371 |
| ) | T. 18 U.S.C. §2 |
| Defendants. ) | |

**THE GRAND JURY CHARGES:**

## COUNT 1
## (CONSPIRACY)

### A. INTRODUCTION

At all times relevant to this Indictment:

1. Defendant Winnifer Elvidge was a mortgage broker in Scott County, Iowa, who operated a business known as Victoria Mortgage.

2. Defendant Paul Bieber was an attorney licensed in the State of Iowa and practicing in Scott County, Iowa, in the field of property law.

### B. THE CONSPIRACY

3. Beginning during or about June 2005 and continuing to on or about July 27, 2006, the defendants, WINNIFER ELVIDGE and PAUL BIEBER, did knowingly combine, conspire, confederate, and agree with each other and with other persons known to the grand jury to commit the following offenses against the United States:

   a. To knowingly devise and intend to devise a scheme to defraud as to material matters and to obtain money and property by means of materially false and fraudulent pretenses,

representations, and promises, and by intentional concealment of material facts, and, for the purpose of executing such scheme to defraud, to cause to be delivered, by mail and by private and commercial interstate carrier, according to the directions thereon, letters and other matters containing documents pertaining to real property purchases, in violation of Title 18, United States Code, Section 1341;

      b.     To knowingly devise and intend to devise a scheme to defraud as to material matters and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and by intentional concealment of material facts, and, for the purpose of executing such scheme to defraud, to knowingly transmit and cause to be transmitted in interstate commerce by means of wire communication, certain signs, signals, pictures, and sounds, that is, fax transmissions of documents pertaining to real property purchases, in violation of Title 18, United States Code, Section 1343; and,

      c.     To knowingly devise a scheme to defraud federally-insured financial institutions, and to obtain money, funds, and assets owned by and under the custody and control of said financial institutions by means of material false and fraudulent pretenses, representations, and promises, and, for the purpose of executing such scheme to defraud, to knowingly cause to be presented to said financial institutions HUD-1 Settlement Statements that misrepresented the actual purchase prices of certain real properties, in violation of Title 18, United States Code, Section 1344.

## C. MANNER AND MEANS OF THE CONSPIRACY

It was part of the conspiracy that:

4. Elvidge identified buyers financially unqualified to purchase real property but who were willing to do so, thereby generating mortgage broker and real estate agent commissions for Elvidge and her co-conspirators.

5. Elvidge made false representations to mortgage lenders, banks, closing agents, and others concerning the assets, liabilities, and other factors material to mortgage qualification.

6. Elvidge provided falsified documentation in support of mortgage applications by the buyers.

7. Elvidge falsely represented to mortgage lenders and banks that buyers had arranged second mortgages when, in fact, such mortgages were nonexistent.

8. Elvidge caused sellers of real property to agree to sell their properties at bogus, inflated prices so larger mortgage loans could be obtained from unwitting mortgage lenders and banks.

9. Elvidge and her co-conspirators drafted and caused to be drafted and presented to each seller a contract and an addendum, the contract reflecting the bogus inflated price (the "inflated price") and the addendum reflecting the price actually negotiated for the transaction (the "actual price"). The addendum also reflected a kickback, or "cash back" payment, to be paid after closing by the seller to the buyer, which approximately equaled the difference between the inflated price and actual price, and which was funded by the fraudulently-obtained mortgage loan proceeds.

10. Elvidge falsely represented to each mortgage lender and bank that the sale price of the property was the inflated price set forth in the contract, and intentionally concealed the existence of the lower, actual price and the kickback.

11. Bieber, aware of the fraudulent nature of the transactions, and aware that another attorney had identified the transactions as fraudulent, acted as attorney for the sellers and facilitated the closings of the bogus loans.

12. After each closing, when the mortgage loan was funded by the lender or bank and monies from those funds paid out to the seller, the seller paid the kickback to the buyer, allowing the buyers to pocket the approximate difference between the inflated price and the actual price.

13. Elvidge and Bieber created and caused to be created false and fraudulent HUD-1 Settlement Statements that:

   a. falsely represented to each lender that the sale price of the property was the inflated price set forth in the contract;

   b. intentionally concealed and failed to disclose the existence of the lower, actual price set forth in the addendum; and,

   c. intentionally concealed and failed to disclose the post-closing kickback paid by each seller to each buyer.

## D. OVERT ACTS

In furtherance of the conspiracy, and to effect the objects thereof, the following overt acts, among others, were committed by one or more of the co-conspirators in the Southern District of Iowa and elsewhere:

14. Each wire transmission and mailing as set forth in Counts 2 through 7 and Counts 12 through 23 of this Indictment is hereby realleged and incorporated by reference as an individual overt act in furtherance of the conspiracy.

15. Each presentation of a HUD-1 Settlement Statement to a federally-insured financial institution as set forth in Counts 8 through 11 of this Indictment is hereby realleged and incorporated by reference as an individual overt act in furtherance of the conspiracy.

16. On November 15, 2005, Bieber acted as attorney for the seller at the closing for the sale of 641 W. 64th Street, Davenport, Iowa, knowing the following:

   a. The contract sales price listed on the HUD-1 Settlement Statement, $120,000, was a bogus price designed to fool the lender, Acoustic Home Loans, into lending the buyer $102,000, when in fact the actual sales price was $72,500;

   b. At closing, the seller, Bieber's client, would receive a payout of about $56,000 funded by the proceeds of the loan by Acoustic Homes Loans;

   c. After closing, the seller, Bieber's client, would kickback to the buyer about $41,000 of those proceeds, all without the knowledge of Acoustic.

17. On November 17, 2005, Bieber acted as attorney for the seller at the closing for the sale of 6217 Western Avenue, Davenport, Iowa, knowing the following:

   a. The contract sales price listed on the HUD-1 Settlement Statement, $110,000, was a bogus price designed to fool the lender, Acoustic Home Loans, into lending the buyer $93,500, when in fact the actual sales price was $65,000;

   b. At closing, the seller, Bieber's client, would receive a payout of about $59,000 funded by the proceeds of the loan by Acoustic Homes Loans;

  c. After closing, the seller, Bieber's client, would kickback to the buyer about $39,000 of those proceeds, all without the knowledge of Acoustic.

 18. On November 18, 2005, Bieber acted as attorney for the seller at the closing for the sale of 679 W. 64th Street, Davenport, Iowa, knowing the following:

  a. The contract sales price listed on the HUD-1 Settlement Statement, $115,000, was a bogus price designed to fool the lender, Acoustic Home Loans, into lending the buyer $97,500, when in fact the actual sales price was $72,500;

  b. At closing, the seller, Bieber's client, would receive a payout of about $51,000 funded by the proceeds of the loan by Acoustic Homes Loans;

  c. After closing, the seller, Bieber's client, would kickback to the buyer about $28,000 of those proceeds, all without the knowledge of Acoustic.

 19. On December 9, 2005, Bieber acted as attorney for the seller at the closing for the sale of 1818 Esplanade Avenue, Davenport, Iowa, knowing the following:

  a. The contract sales price listed on the HUD-1 Settlement Statement, $155,000, was a bogus price designed to fool the lender, InterBay Funding, into lending the buyer $108,500, when in fact the actual sales price was $105,000;

  b. At closing, the seller, Bieber's client, would receive a payout of about $61,000 funded by the proceeds of the loan by InterBay Funding;

  c. After closing, the seller, Bieber's client, would kickback to the buyer about $55,000 of those proceeds, all without the knowledge of InterBay Funding.

 20. On December 13, 2005, Bieber acted as attorney for the seller at the closing for the sale of 635 W. 64th Street, Davenport, Iowa, knowing the following:

  a. The contract sales price listed on the HUD-1 Settlement Statement, $110,000, was a bogus price designed to fool the lender, First Street Financial, into lending the buyer $99,000, when in fact the actual sales price was $65,000;

  b. At closing, the seller, Bieber's client, would receive a payout of about $59,000 funded by the proceeds of the loan by First Street Financial;

  c. After closing, the seller, Bieber's client, would kickback to the buyer about $44,000 of those proceeds, all without the knowledge of First Street Financial.

 21. On December 15, 2005, Bieber made the kickback payment to the buyers of 1818 Esplanade Avenue by drafting a check for $55,000 on his law firm trust fund account and by tendering the check to the buyers.

 This is a violation of Title 18, United States Code, Section 371.

### COUNTS 2 through 4
### (Mail Fraud)

 1. Beginning during or about June 2005, and continuing to on or about July 27, 2006, in the Southern District of Iowa, and elsewhere, the defendants, WINNIFER ELVIDGE and PAUL BIEBER, and others, did devise and intend to devise a scheme to defraud as to material matters and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and by intentional concealment of material facts.

 2. The nature and scope of the scheme to defraud is described in Paragraphs 1, 2 and 4 through 13 of Count 1 of this Indictment, which paragraphs are hereby realleged and incorporated by reference.

3. On or about the dates indicated, in and about Scott County in the Southern District of Iowa, and elsewhere, the defendants, WINNIFER ELVIDGE and PAUL BIEBER, and others, having devised and intended to devise a scheme to defraud, and for obtaining money by means of material false and fraudulent pretenses and representations, and for the purpose of executing such scheme to defraud, did knowingly cause to be delivered, and did attempt to cause to be delivered, by mail and by private and commercial interstate carrier, according to the directions thereon, letters and other matters from Excel Title in Illinois to RH and DH in Iowa, said letters containing documents pertaining to purchases of the real properties located at the addresses set forth below.

| **Count** | **Date** | **Document(s) Mailed** | **Property Address** |
| --- | --- | --- | --- |
| 2 | December 5, 2005 | Warranty Deed | 641 West 64th Street |
| 3 | December 5, 2005 | Warranty Deed | 6217 Western Avenue |
| 4 | December 5, 2005 | Warranty Deed Mortgage | 679 West 64th Street |

These are violations of Title 18, United States Code, Sections 1341 and 2.

### COUNTS 5 and 6
### (Wire Fraud)

1. Beginning during or about June 2005, and continuing to on or about July 27, 2006, in the Southern District of Iowa, and elsewhere, the defendants, WINNIFER ELVIDGE and PAUL BIEBER, and others, did devise and intend to devise a scheme to defraud as to material matters and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and by intentional concealment of material facts.

2. The nature and scope of the scheme to defraud is described in Paragraphs 1, 2, and 4 through 13 of Count 1 of this Indictment, which paragraphs are hereby realleged and incorporated by reference.

3. On or about the dates indicated, in the Southern District of Iowa, and elsewhere, the defendants, WINNIFER ELVIDGE and PAUL BIEBER, and others, having devised and intended to devise a scheme to defraud, and for obtaining money by means of material false and fraudulent pretenses and representations, and for the purpose of executing such scheme to defraud, did knowingly transmit and cause to be transmitted in interstate commerce between the State of Iowa and the State of Illinois, by means of wire communication, certain signs, signals, pictures, and sounds, to wit: fax transfers from Iowa to Excel Title in Illinois of certain indicated documents pertaining to the real properties described in each count, each property located in Davenport, Iowa.

| **Count** | **Date** | **Documents Fax-ed** | **Property Address** |
|---|---|---|---|
| 5 | December 8, 2005 | Bieber closing figures | 1818 Esplanade Avenue |
| 6 | December 9, 2005 | Harper closing figures | 635 West 64th Street |

These are violations of Title 18, United States Code, Sections 1343 and 2.

### COUNT 7
### (Wire Fraud)

1. Beginning during or about June 2005, and continuing to on or about July 27, 2006, in the Southern District of Iowa, and elsewhere, the defendant, WINNIFER ELVIDGE, and others, did devise and intend to devise a scheme to defraud as to material matters and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and by intentional concealment of material facts.

2. The nature and scope of the scheme to defraud is described in Paragraphs 1, 2, and 4 through 13 of Count 1 of this Indictment, which paragraphs are hereby realleged and incorporated by reference.

3. On or about February 7, 2006, in the Southern District of Iowa, and elsewhere, the defendant, WINNIFER ELVIDGE, and others, having devised and intended to devise a scheme to defraud, and for obtaining money by means of material false and fraudulent pretenses and representations, and for the purpose of executing such scheme to defraud, did knowingly transmit and cause to be transmitted in interstate commerce between the State of Iowa and the State of Illinois, by means of wire communication, certain signs, signals, pictures, and sounds, to wit: fax transfers from Victoria Mortgage in Iowa to Excel Title in Illinois of real estate purchase contracts pertaining to the purchases of the properties located at 6204 Western Avenue and 6112 Western Avenue, both properties located in Davenport, Iowa.

This is a violation of Title 18, United States Code, Sections 1343 and 2.

### COUNT 8 through 11
### (Bank Fraud)

1. Beginning during or about June 2005, and continuing to on or about July 27, 2006, in the Southern District of Iowa, and elsewhere, the defendant, WINNIFER ELVIDGE, and others, did devise and intend to devise a scheme to defraud as to material matters and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and by intentional concealment of material facts.

2. The nature and scope of the scheme to defraud is described in Paragraphs 1, 2, and 4 through 13 of Count 1 of this Indictment, which paragraphs are hereby realleged and incorporated by reference.

3. On or about the dates indicated, in the Southern District of Iowa, and elsewhere, the defendant, WINNIFER ELVIDGE, and others, having devised the scheme set forth above to defraud a financial institution, and to obtain money, funds, and assets owned by and under the custody and control of a financial institution by means of material false and fraudulent pretenses, representations, and promises, did execute and attempt to execute said scheme by causing to be presented to Wells Fargo Bank, a financial institution the deposits of which were insured by the Federal Deposit Insurance Corporation, HUD-1 Settlement Statements stating that the purchase prices of the indicated properties, all located in Davenport, Iowa, were as listed below in each count, whereas the defendants well knew that the purchase prices were less than stated in the HUD-1 Settlement Statements.

| Count | Date | Property Address | Stated Purchase Price |
|---|---|---|---|
| 8 | April 12, 2006 | 1220 Main Street | $105,000 |
| 9 | April 19, 2006 | 1228 Tremont Ave. | $85,000 |
| 10 | May 2, 2006 | 6224 Appomattox Rd. | $125,000 |
| 11 | May 2, 2006 | 6232 Appomattox Rd. | $125,000 |

These are violations of Title 18, United States Code, Sections 1344 and 2.

## COUNTS 12 through 23
## (Wire Fraud)

1. Beginning during or about June 2005, and continuing to on or about July 27, 2006, in the Southern District of Iowa, and elsewhere, the defendant, WINNIFER ELVIDGE, and others, did devise and intend to devise a scheme to defraud as to material matters and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and by intentional concealment of material facts.

2. The nature and scope of the scheme to defraud is described in Paragraphs 1, 2, and 4 through 13 of Count 1 of this Indictment, which paragraphs are hereby realleged and incorporated by reference.

3. On or about the dates indicated, in and about Scott County in the Southern District of Iowa, and elsewhere, the defendant, WINNIFER ELVIDGE, and others, having devised and intended to devise a scheme to defraud, and for obtaining money by means of material false and fraudulent pretenses and representations, and for the purpose of executing such scheme to defraud, did knowingly transmit and cause to be transmitted in interstate commerce between the State of Iowa and the State of Illinois, by means of wire communication, certain signs, signals, pictures, and sounds, to wit: fax transfers from Victoria Mortgage in Iowa to Excel Title in Illinois of certain indicated documents pertaining to one or more real properties described in each count, each property located in Davenport, Iowa.

| Count | Date | Documents Fax-ed | Property Address |
|---|---|---|---|
| 12 | April 19, 2006 | request for title commitment<br>real estate purchase contract | 6302 Appomattox Road |
| 13 | April 19, 2006 | request for title commitment<br>real estate purchase contract | 6314 Appomattox Road |
| 14 | May 17, 2006 | request for title commitment<br>real estate purchase contract | 640 W. 61st Street |
| 15 | May 22, 2006 | request for title commitment | 671 W. 64th Street |
| 16 | May 15, 2006 | request for title commitment<br>real estate purchase contract | 615 W. 64th Street |
| 17 | May 15, 2006 | request for title commitment<br>real estate purchase contract | 655 W. 64th Street |
| 18 | June 16, 2006 | real estate purchase contract | 710 W. 61st Street |
| 19 | July 13, 2006 | residential loan application | 665 W. 64th Street |
| 20 | June 22, 2006 | request for title commitment<br>real estate purchase contract | 6212 Brown Street |
| 21 | June 22, 2006 | request for title commitment<br>real estate purchase contract | 6104 Brown Street |
| 22 | June 22, 2006 | request for title commitment<br>real estate purchase contract | 6308 Appomattox Road |
| 23 | July 24, 2006 | residential loan application | 6203 Brown Street |

These are violations of Title 18, United States Code, Sections 1343 and 2.

**A TRUE BILL**

/s/
FOREPERSON

Nicholas A. Klinefeldt
United States Attorney

By: /s/
Donald Allegro
Assistant United States Attorney